FILED
RICHARD W. NAGEL
CLERK OF COURT

5/8/24

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. CINCINNATI

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO.   3:24-cr-45 |
| Plaintiff, | : | INDICTMENT |
| v. | : | Michael J. Newman |
| 1. ALEX GARNETT,<br>(Counts 1, 6, 7, 8, 9, 10, 11, 12) | : | 18 U.S.C. § 1343<br>18 U.S.C. § 1349 |
| | : | 18 U.S.C. § 1956(a)(1)(A)(i) |
| 2. CHRISTOPHER PERKINS,<br>(Counts 1, 2, 3, 4, 11, 13) | : | 18 U.S.C. § 1956(a)(1)(B)(i)<br>18 U.S.C. § 1956(h) |
| 3. MARVIOUS HESTER,<br>(Counts 1, 6) | : | 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)<br>21 U.S.C. §§ 841(a)(1) and (b)(1)(C)<br>21 U.S.C. § 846 |
| | : | |
| 4. JORGE PERAZA,<br>(Counts 1, 5) | : | |
| 5. MARKAIL SMITH,<br>(Counts 1, 4) | : | |
| | : | |
| 6. RICHARD WATSON III,<br>(Count 1) | : | |
| 7. ADRIAN MYLES,<br>(Count 1) | : | |
| | : | |
| 8. KIMBERLY HUBBARD,<br>(Count 11) | : | |
| 9. TIERRA WOMACK,<br>(Count 11) | : | |
| | : | FORFEITURE ALLEGATIONS |
| Defendants. | : | |

THE GRAND JURY CHARGES THAT:

## COUNT 1
### [21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B)]

1

I.      THE CONSPIRACY

1.      Beginning on an exact date unknown, but at least on or about September 2022 and continuing through at least on or about March, 2024, in the Southern District of Ohio and elsewhere, the defendants, **ALEX GARNETT, CHRISTOPHER PERKINS, MARVIOUS HESTER, JORGE PERAZA, MARKAIL SMITH, RICHARD WATSON III, ADRIAN MYLES**, and others known and unknown to the Grand Jury, did knowingly and intentionally conspire to possess with intent to distribute and to distribute:

a.  40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance; and

b.  500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance;

in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

II.     MANNER AND MEANS OF THE CONSPIRACY

2.      The conspiracy operated, and was designed to operate, in the following manner:

a.      With the assistance of other people, defendants **GARNETT** and **PERKINS** acquired narcotics including fentanyl and cocaine, from sources outside of Ohio for the purpose of resale and distribution in the Southern District of Ohio.  **PERKINS** would periodically travel to other states, including but not limited to Georgia and Alabama to obtain narcotics. **GARNETT** had others, including **HESTER**, ship narcotics to him from other states and had others, including **PERAZA**, bring drugs to him from other states.

b.      In an effort to conceal this drug trafficking operation and to deter its detection, defendant **GARNETT** distributed and stored the narcotics at other locations and with

2

other individuals, including with **WATSON** and **MYLES**. **WATSON** and **MYLES** distributed street-level amounts of drugs and paid **GARNETT** for the drugs from the profits they earned from those sales. **PERKINS** used **SMITH** to assist in the distribution of narcotics.

c.       Defendants **GARNETT**, **PERKINS**, **HESTER**, **PERAZA**, **SMITH**, **WATSON**, and **MYLES** used various instrumentalities of interstate commerce – including cellular telephones, automobiles, and private carriers – to conduct their illegal business.

d.       In this manner, defendants **GARNETT**, **PERKINS**, **HESTER**, **PERAZA**, **SMITH**, **WATSON**, and **MYLES** and others known and unknown to the Grand Jury distributed, and intended to distribute, fentanyl and cocaine throughout southern Ohio.

All in violation of Title 21, United States Code, Sections 846 and 841(a)(1) and (b)(1)(B).

## COUNT 2
### [21 U.S.C. §§ 841(a)(1) and (b)(1)(C)]

On or about September 1, 2022, in the Southern District of Ohio, defendant **CHRISTOPHER PERKINS** knowingly and intentionally distributed a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

## COUNT 3
### [21 U.S.C. §§ 841(a)(1) and (b)(1)(B)]

On or about October 18, 2022, in the Southern District of Ohio, defendant **CHRISTOPHER PERKINS** knowingly and intentionally distributed 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

3

## COUNT 4
### [21 U.S.C. §§ 841(a)(1) and (b)(1)(B); 18 U.S.C. § 2]

On or about January 19, 2023, in the Southern District of Ohio, defendants **CHRISTOPHER PERKINS** and **MARKAIL SMITH**, aiding and abetting one another, did knowingly and intentionally distributed 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), and Title 18, United States Code Section 2.

## COUNT 5
### [21 U.S.C. §§ 841(a)(1) and (b)(1)(B)]

On or about November 22, 2023, in the Southern District of Ohio, the defendant, **JORGE PERAZA**, did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

## COUNT 6
### [18 U.S.C. §§ 1956(h) and 1956(a)(1)(A)(i)]

From an exact date unknown but at least by on or about January 9, 2023 and continuing through on or about February 13, 2024, in the Southern District of Ohio and elsewhere, defendants **GARNETT** and **HESTER**, and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, and agree with each other to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is conspiracy to possess with the intent to distribute

4

and to distribute a controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a), with the intent to promote the carrying on of the specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 7 -9
### [18 U.S.C. § 1956(a)(1)(B)(i)]

On or about the dates specified below, while in the Southern District of Ohio, defendant **GARNETT** did knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of a specified unlawful activity, that is: conspiracy to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), knowing that the transactions were designed, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

| Count | Date (on or about) | Transaction |
|-------|--------------------|-------------|
| 7 | On or about January 19, 2021, through January 28, 2021 | Deposits of narcotics proceeds into JP Morgan Chase bank accounts. |
| 8 | On or about September 6, 2022, through September 8, 2022 | Deposits of narcotics proceeds into JP Morgan Chase bank accounts. |
| 9 | On or about June 20, 2023, through June 26, 2023 | Deposits of narcotics proceeds into JP Morgan Chase bank accounts. |

5

## COUNT 10
### [18 U.S.C. § 1956(a)(1)(A)(i)]

Beginning on an exact date unknown but in or around January 31, 2024 through on or about February 13, 2024, in the Southern District of Ohio, defendant **GARNETT** did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is conspiracy to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a), with the intent to promote the carrying on of the specified unlawful activity, that is conspiracy to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a), and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

## COUNT 11
### [18 U.S.C. § 1349]

### I.     INTRODUCTION

At all times relevant to this Indictment:

1.     In March 2020, Congress passed a $2.2 trillion economic relief bill known as the Coronavirus Aid, Relief, and Economic Security ("CARES") Act designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. The Employee Retention Tax Credit ("ERC") was part of the CARES Act, which was passed by Congress and signed into law on March 27, 2020. The ERC was designed to encourage businesses to keep employees on their payroll throughout the COVID-19 pandemic. The ERC is a refundable tax credit against certain employment taxes equal to 50% of

6

the qualified wages an eligible employer pays to employees between March 13, 2020 and December 31, 2021. Inasmuch as the ERC can apply to wages already paid after March 12, 2020, qualified employers can get access to the ERC by submitting tax filing information to the Internal Revenue Service.

2.      To be eligible for the ERC, employers must have: (i) sustained a full or partial suspension of operations limiting commerce, travel, or group meetings due to COVID-19 and orders from an appropriate governmental authority; (ii) experienced a significant decline in gross receipts during the tax periods ending March 31, 2020, through December 31, 2020, or a decline in gross receipts during the tax periods ending March 31, 2021, through December 31, 2021; or (iii) qualified as a recovery startup business during the tax periods ending September 31, 2021, and December 31, 2021. The credit can be claimed retroactively until 2025 and can be claimed on an annual payroll tax return Form 944. The ERC is a refundable tax credit, so if the credit exceeds the total payroll tax liability and other liabilities, the remaining amount is returned as a refund to the employer.

3.      In response to rampant ERC fraud, on September 14, 2023, the Internal Revenue Service issued a press release announcing that it would immediately stop processing claims for the ERC until December 31, 2023, while additional safeguards are implemented to prevent continued abuses of the credit. The Internal Revenue Service has resumed processing ERC claims and, in some cases, has issued requests for additional information.

## II.      THE CONSPIRACY AND ITS OBJECTIVE

4.      Beginning on an exact date unknown, but at least by in or around March 2023 and continuing through in or around March 2024, in the Southern District of Ohio and elsewhere, defendants **KIM HUBBARD, GARNETT, TIERRA WOMACK,** and **PERKINS**, along with

7

other individuals, whose identities are both known and unknown to the Grand Jury, acting with the intent to defraud, knowingly and intentionally conspired:

a. to devise, execute, and participate in a scheme and artifice to defraud the Internal Revenue Service ("IRS"), a department of the United States, by means of materially false and fraudulent pretenses, representation, and promise, and for the purpose of carrying out and executing such scheme or artifice, caused the transmission of writings, signs, and signals by means of wire communications in interstate commerce, in violation of Title 18, United States Code, Section 1343, the federal wire fraud statute. The scheme to defraud involved a benefit which was authorized, transported, transmitted, transferred, disbursed, and paid in connection with, a presidentially declared major disaster or emergency as defined in Section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

## III.    THE SCHEME TO DEFRAUD

5. Beginning on an exact date unknown, **HUBBARD**, devised and intended to devise a scheme to defraud the IRS, by means of materially false and fraudulent pretenses, representations, and promises.

6. It was part of the scheme that defendant **HUBBARD** communicated with various individuals, including **GARNETT, WOMACK**, and **PERKINS**, as well as others known and unknown to the Grand Jury ("the Applicants"), to prepare materially false and fraudulent claims for ERC money with the IRS on behalf of the Applicants.

7. More specifically, the Applicants, utilizing shell businesses, provided false information to **HUBBARD** concerning the shell businesses, including numbers of employees and amount of income. While these companies existed on paper, in reality, they had no employees or income.

8

8.      Knowing the Applicants' information was false, **HUBBARD** nevertheless used it to complete IRS Form 944 applications. That information included business names and EIN numbers related to the Applicants. **HUBBARD** prepared the IRS Form 944 using false and fraudulent business information regarding employee numbers and wages paid during various tax years. **HUBBARD** submitted the IRS Form 944 to the IRS by means of electronic wire submissions, even though she knew that they were false.

9.      As noted above, **HUBBARD** was aware that the information Applicants provided to her was false. For instance, **HUBBARD** filed numerous fraudulent IRS Form 944s for different businesses with identical income amounts, resulting in identical ERC credit refund amounts.

10.     The Applicants paid **HUBBARD** an initial filing fee and agreed to further pay a "commission" or percentage of the monies that IRS paid out to the Applicants.

11.     In the IRS Form 944s, **HUBBARD** did not identify herself as a paid return preparer. Additionally, **HUBBARD** did not submit an application for return preparer status with the IRS.

12.     Once **HUBBARD** submitted the IRS Form 944 applications, the IRS requested additional follow up information. Using telephones, the Applicants worked with **HUBBARD** to plan to provide additional false information to the IRS. For example, on or about October 24, 2023, **HUBBARD** instructed **GARNETT** how to fraudulently complete IRS forms for two of his companies. **HUBBARD** instructed **GARNETT** to fax the forms from two separate locations so that the forms would be received by two separate IRS employees. This was done to help conceal that **GARNETT** was submitting two similar ERC requests at the same time.

All in violation of Title 18, United States Code, Section 1349.

9

## COUNTS 12 THROUGH 13
### [18 U.S.C. § 1343]

The allegations of paragraphs 1 through 9 of Count 11 of this Indictment are realleged and incorporated by reference as though set forth in full.

On or about the dates specified below, while in the Southern District of Ohio and elsewhere, the defendants identified below, with intent to defraud and having devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purposes of executing and attempting to execute such a scheme and artifice, did knowingly cause to be transmitted, in interstate commerce, by means of wire communications, certain writings, signs, signals, and sounds in the manner described below:

| Count | Defendant | Date (on or about) | Wire Transmission |
|-------|-----------|--------------------|-------------------|
| 12 | **GARNETT** | September 19, 2023 | Defendant, **GARNETT**, caused to be submitted IRS Form 944 in support of ERC claims on behalf of EXLA Construction LLC. |
| 13 | **PERKINS** | March 3, 2024 | Defendant, **PERKINS**, caused to be submitted IRS Form 944 in support of ERC claims on behalf of Caps Towing LLC. |

In violation of 18 U.S.C. § 1343.

### FORFEITURE ALLEGATION 1

Upon conviction of one or more of the offenses set forth in Counts 1 through 5 of this Indictment, the defendants, **ALEX GARNETT, CHRISTOPHER PERKINS, MARVIOUS HESTER, JORGE PERAZA, MARKAIL SMITH, RICHARD WATSON III,** and **ADRIAN MYLES**, shall forfeit to the United States, pursuant to 21 U.S.C. § 853(a), (1) any property

constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation(s), and (2) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation(s) including, but not limited to, a 2015 orange Mini Cooper bearing Ohio License Plate HUD4302 and VIN WMWXP7C51F2A40952, with all attachments thereon.

## FORFEITURE ALLEGATION 2

Upon conviction of one or more of the offenses set forth in Counts 6 through 10 of this Indictment, the defendants, **ALEX GARNETT** and **MARVIOUS HESTER**, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense(s), and any property traceable to such property including, but not limited to, a sum of money which represents the amount of money involved in the offense(s).

## FORFEITURE ALLEGATION 3

Upon conviction of one or more of the offenses set forth in Counts 11 through 13 of this Indictment, the defendants, **ALEX GARNETT**, **CHRISTOPHER PERKINS**, **KIMBERLY HUBBARD,** and **TIERRA WOMACK**, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation(s) including, but not limited to, a sum of money which represents the amount of proceeds the defendant(s) obtained as a result of the offense(s).

## SUBSTITUTE ASSETS

If any of the property described above, as a result of any act or omission of the defendants:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

11

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) or as incorporated by 18 U.S.C. § 982(b)(1) or 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendants, up to the value of the property described above.

A TRUE BILL

/s/

FOREPERSON

KENNETH L. PARKER
United States Attorney

AMY M. SMITH
CHRISTINA E. MAHY
Assistant United States Attorneys

12